# In the United States Court of Federal Claims

No. 23-31
(Filed: 24 August 2026)*

| | |
|---|---|
| ECHELON SERVICES, LLC, | * |
| Plaintiff, | * |
| v. | * |
| THE UNITED STATES, | * |
| Defendant. | * |

*Shomari B. Wade*, with whom were *Michael J. Gardner*, *Timothy M. McLister*, *Christopher M. O'Brien*, *Jordan N. Malone*, *Olivia Bellini*, all of Greenberg Traurig, of Washington, DC for plaintiff.

*John H. Roberson*, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, with whom were *Steven J. Gillingham,* Assistant Director, *Patricia M. McCarthy*, Director, U.S. Department of Justice, of Washington, DC, and *Jacqueline McCain*, Chief, Business Law Division B, Army Material Command Legal Center, of Aberdeen Proving Ground, MD, with whom was *Capt. Sana H. Daniell*, Trial Attorney, Contract Litigation and Intellectual Property Division, of Fort Belvoir, VA, for the defendant.

## OPINION AND ORDER

**HOLTE, Judge.**

In 2021, the Army awarded a contract to plaintiff Echelon Services, LLC, to provide McAfee software licenses. Plaintiff received the contract under the 8(a) set-aside program because plaintiff is a Native Hawaiian Organization-owned company. Immediately after securing the contract, plaintiff contracted with other, non-Hawaiian companies to receive the contract payments and provide the software—plaintiff kept no benefit or obligation for itself except hundreds of thousands of dollars in what is essentially a finder's fee. While the 8(a) program "provide[s] assistance exclusively for [economically and socially disadvantaged] small business concerns" by reserve contracting opportunities, plaintiff could not identify any work members of the disadvantaged businesses were doing, save passing the contract along and

* This Opinion was originally filed under seal on 13 August 2026 pursuant to the protective order in this case. The Court provided the parties an opportunity to review this Opinion for proprietary, confidential, or other protected information and submit proposed redactions by 20 August 2026 at 12:00 p.m. On 24 August 2026, the parties confirmed they do not seek redaction of the Opinion. The Opinion is now reissued for publication.

taking a cut off the top.[1] The Army's contract with plaintiff was structured with an initial year, which was heavily discounted to accommodate an Army budget shortfall, and several option years whose price would gradually increase to offset the discount. The Army incorporated into the contract promises the software was essential and it would only decline an option year if it lacked funds to do so. After the first year, however, the Army declined to exercise any of the option years and plaintiff sued in this court for breach of contract. After two years of attempted Alternative Dispute Resolution, the government filed a Motion for Summary Judgment arguing plaintiff assigned away its right to sue for the remaining payments on the contract in violation of the Anti-Assignment Acts, thus plaintiff has no damages to sue for. For the following reasons, the Court **GRANTS in PART** and **DENIES in PART** the government's Motion for Summary Judgment.

## I. Background

### A. Factual History[2]

On 24 July 2020, before the contract with the government in this case, plaintiff Echelon entered into a Master Purchase Agreement with ePlus Government, Inc. ("ePlus"). Gov't's Mot. for Summ. J. ("MSJ") at 6, ECF No. 36. Under the Master Purchase Agreement, plaintiff agreed to transfer its "rights, title[,] and interest in any [f]ederal contract delivery order payments to ePlus," and became obligated to cooperate with ePlus in any potential lawsuit against the United States. *Id.* at 6, 8. When plaintiff agreed to the Master Purchase Agreement, it "agree[d] to sponsor a suit as needed in its name" and under the direction of ePlus. *Id.*

On 25 February 2021, the Army awarded a contract to plaintiff to provide McAfee software licenses and maintenance. Pl.'s Resp. in Opp. to Gov't's MSJ ("Pl.'s Resp.") at 4–5, ECF No. 38. "The award was a direct 8(a) small business set-aside award to Echelon as the prime contractor." *Id.* at 5 (citing Compl., Ex. A (Echelon-Army Contract)). The Army contract included one base year of performance, priced at $2.5 Million, then up to four option years with steady increases in price. Compl., Ex. A at 4 (Echelon-Army Contract). This arrangement offered the Army up-front cost savings on the initial years, with plaintiff able to make profit on the arrangement by seeking multi-year pricing from McAffee and reaping increased revenues in the later years. The Army also incorporated into the contract plaintiff's "Payment Terms," which warranted the software was both essential to its operations for the whole term of option years and the Army would only decline to exercise the options if it lacked appropriations to do so. *See* Compl., Ex. A at 25–26 (Echelon-Army Contract).

After securing the contract, plaintiff assigned the payments from the contract to Wilmington Trust on 2 March 2021, and Wilmington Trust served the Army with a notice of the assignment and a copy of the assignment agreement. *See* Gov't's MSJ, Ex. 9 (Notice of

---

[1] 15 U.S.C. § 636(j)(10) (bracketed material quoting from 15 U.S.C. § 637(a) cross-reference); Tr. at 81:4–23.

[2] All facts in this section are undisputed, unless stated otherwise. *See* RCFC 56(a) (requiring a movant for summary judgment to demonstrate "there is no genuine dispute as to any material fact"). The Court draws all inferences "in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Assignment and copy of Instrument of Assignment to Wilmington Trust). Pursuant to the Master Purchase Agreement, plaintiff then transferred its right to the contract payments to ePlus in a separate agreement. *See* Gov't's MSJ, Ex. 3 at 1 (Schedule 2 Agreement between plaintiff and ePlus). The Schedule 2 Agreement incorporated the terms of the Master Purchase Agreement and plaintiff agreed to "assign[] and transfer[] to [ePlus] all of [plaintiff's] rights and interest, but none of its obligations, in the [contract] payments" in return for a sum of money labeled the "Assignment Price." *See id.* In addition, ePlus agreed to transfer another sum of money to Red River, a technology company engaging with McAfee to procure the software for the Army. *Id.* Plaintiff did not file a formal notice of the Schedule 2 agreement with the government.

On 30 March 2026, ePlus signed an "Assignment Agreement" with Wells Fargo in which ePlus agreed to "sell, transfer, convey, and assign to [Wells Fargo] . . . all and every right, title and interest of [ePlus] . . . in and to" the contract between plaintiff and the government. Gov't's MSJ, Ex. 11 at 2 (Assignment Agreement between ePlus and Well Fargo). ePlus's contract with Wells Fargo required ePlus to collect the amount due from the Army and deliver those payments to Wells Fargo. *Id.* Additionally, Wells Fargo gave up any right of indemnification against ePlus outside of ePlus's own inaccurate representations or performance issues. *Id.* at 8.

On 4 April 2021, the Army made the payment for the base year of the contract to Wilmington Trust. Gov't's MSJ, Ex. 14 (Plaintiff's invoice to the Government for the first contract year). The next year, however, 1 February 2022, the contracting officer notified plaintiff the Army would not be renewing the option years of the contract because "McAfee was removed from the [Tactical Network Transport] software baselines." Compl., Ex. C at 2 (Email on 1 February 2022 between Army Officers). On 5 May 2022, plaintiff submitted a certified claim and a request for Contracting Officer's Final Decision under the Contracts Disputes Act claiming damages from "the Army's Contract breach and failure to undertake its best efforts to obtain the necessary funding to exercise the Contract's first option period and for failing to renew when the circumstances for non-renewal did not exist." Compl., Ex. D. at 1 (Claim and Demand for Contracting Officer's Final Decision). Plaintiff's certified claim also stated it was bringing its claim to "protect the interests of ePlus . . . and Wilmington Trust." *Id.*

The Contracting Officer issued a final decision on 4 October 2022 denying plaintiff's claim. Compl., Ex. J (Contracting Officer's Final Decision). On 6 January 2023, plaintiff submitted a supplemental claim to the Army, claiming the Army had continued to download and use the McAfee software between December 2021 and June 2022, despite the base year of the contract concluding in December 2021 and the Army's February 2022 decision not to execute the first option year. Compl., Ex. K at 6–7 (Supplemental Claim to the Contracting Officer).

### B. Procedural History

On 9 January 2023, plaintiff filed its Complaint noting the action is brought "on behalf of itself as the prime contractor, and to protect the interests of ePlus Government, Inc. and Wilmington Trust." *See* Compl. ¶ 1. After the government filed an answer on 23 June 2023,

the parties jointly moved on 8 August 2023 to stay this case "pending an informal exchange of documents and evaluation of such productions by the parties." Joint Mot. to Stay at 1, ECF No. 10. The parties pursued settlement or Alternative Dispute Resolution avenues until 29 May 2025, when the parties filed a Joint Status Report ("JSR") concluding "judicial resolution of this matter is likely to be necessary." 29 May 2025 JSR at 1, ECF No. 26. On 5 June 2025 plaintiff filed a Motion for Leave to File a Motion to Compel Arbitration, ECF No. 27. The Court terminated the stay in this case, stayed any briefing on plaintiff's arbitration motion, and scheduled summary judgment briefing on 9 June 2025. The government moved for summary judgment on 9 July 2025. Gov't's MSJ at 1, ECF No. 36. On 6 August 2025, plaintiff filed a response to the government's Motion for Summary Judgment. *See* Pl.'s Resp, ECF No. 38. The government filed its reply on 20 August 2025. *See* Govt.'s Reply in Supp. of its Mot. for Summ. J. ("Gov't's Reply"), ECF No. 39. The Court held oral argument on the government's Motion on 11 February 2026. *See* 15 December 2025 Order Setting Oral Argument, ECF No. 43.

## II. Parties' Arguments

The government first argues plaintiff's agreement with ePlus is an assignment which failed to comply with the requirements of the Anti-Assignment Acts, 37 U.S.C. § 3727 and 41 U.S.C. § 6305. Gov't's MSJ at 23. The government asserts the agreement with ePlus assigns away plaintiff's right to the contract payments, but plaintiff had already assigned those rights to Wilmington Trust and failed to notify the government of the assignment to ePlus, each of which independently violates the Anti-Assignment Acts. *Id.* The government goes on to state an assignment in violation of these acts is rendered "null and void as against the United States as a matter of law." *Id.* at 24. As a result, the government argues plaintiff cannot state a claim for damages related to the government's alleged breach because it assigned away any interest in the remaining contract payments it now seeks. *Id.* at 25. The government agrees plaintiff did not forfeit its own right to bring a breach of contract claim for damages it suffered from the government's alleged breach; rather, it argues plaintiff may only recover damages plaintiff suffered. *Id.* at 26. The government argues plaintiff's damages are zero because plaintiff was "paid in full through its sale and assignment of all of its payment and claim rights [] and thus ha[s] no damages to assert itself." *Id.* at 30.

Plaintiff argues in response it fully complied with the Anti-Assignment Acts because the government agrees the assignment to Wilmington Trust is valid and the Acts permit one assignee to act "as agent or trustee for more than one party participating in the financing." Pl.'s Resp. at 16–17. Plaintiff asserts the government is not entitled to "the specific details of a private financing arrangement" under the Anti-Assignment Acts, so it was not a violation for plaintiff to make additional arrangements with financiers other than Wilmington Trust and plaintiff can still sue for the contract payments which would have come absent the government's breach. *Id.* at 11. Additionally, plaintiff argues the government has failed to show plaintiff "has been absolved of all responsibility or liability through its agreement with ePlus," and thus the government cannot seek dismissal of a pass-through claim by plaintiff. *Id.* at 17. Finally, plaintiff argues the government waived any defense related to the Anti-Assignment Acts by failing to raise those defenses in its answer in 2023, and plaintiff has

been prejudiced by the lack of notice the government intended to raise this defense. *Id.* at 19–21.

In reply, the government argued it met its burden on summary judgment to demonstrate plaintiff faces no liability to a third party, and it becomes plaintiff's burden to show "specific facts" proving it faces liability which could be the basis of a pass-through claim. Gov't's Reply at 11. The government further asserts plaintiff does not dispute it attempted to assign the same rights under the contract to multiple parties, and argues this is a clear violation of the Anti-Assignment Acts even if one assignee is permitted to act as a paying agent for multiple parties. *Id.* at 6–7. The government thus repeats its assertion plaintiff has sold away any rights to demand the remaining contract payments to parties who, holding invalid assignments, lack privity with the government. *Id.* at 5. Finally, the government argues it was not on notice the Anti-Assignment Act defenses would be relevant until after engaging with plaintiff following its answer, and in any event plaintiff has suffered no prejudice from the government's raising of this defense. *Id.* at 18.

## III. Applicable Law

### A. Standard of Review for Motion for Summary Judgment

"Summary judgment is proper 'if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Plastipak Packaging, Inc. v. Premium Waters,* Inc., 55 F.4th 1332, 1339 (Fed. Cir. 2022) (quoting *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018) (internal citation omitted)). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In evaluating summary judgment motions, courts must "[view the evidence] in a light favorable to the non-movant and all justifiable inferences are to be drawn in its favor." *Lloyd's Food Prods., Inc. v. Eli's, Inc.*, 987 F.2d 766, 767 (Fed. Cir. 1993) (citing *Anderson*, 477 U.S. at 255).

### B. The Anti-Assignment Acts

Two statutes—collectively referred to as the "Anti-Assignment Acts"[3]—operate in partnership with one another to "invalidate assignments of government contracts unless specific conditions are met." *Ham Investments, LLC v. United States*, 388 Fed. App'x 958, 960 (Fed. Cir. 2010) (citing *Tuftco Corp. v. United States*, 222 Ct. Cl. 277, 284–285 (1980)). First, 41 U.S.C. § 6305—titled "Prohibition on transfer of contract and certain allowable assignments"—generally prohibits the "transfer [of a] contract or order, or any interest in the contract or order, to another party," then provides for a limited exception if strict requirements

[3] In the interest of clarity and consistency, the Court refers to 41 U.S.C. § 6305 and 37 U.S.C. § 3727 collectively as the "Anti-Assignment Acts" in the same manner as the Federal Circuit in *Ham Investments, LLC v. United States*. *See* 388 Fed. App'x 958, 960 (Fed. Cir. 2010) ("The United States Court of Federal Claims granted the United States' motion for summary judgment on the grounds that 31 U.S.C. § 3727 and 41 U.S.C. § 15 (collectively, the 'Anti–Assignment Acts') invalidated the assignment that HAM Investments, LLC alleged entitled it to payment, and the Government did not waive the requirements of the Anti–Assignment Acts.") (cleaned up).

are met. These requirements include: (1) "amounts due from the Federal Government under a contract may be assigned to a bank, trust company, Federal lending agency, or other financing institution"; (2) the contract must "total at least $1,000"; (3) the contract does not forbid assignment; (4) the assignment covers the full amount due; (5) the assignment is not "made to more than one party or be subject to further assignment, except that assignment may be made to one party as agent or trustee for 2 or more parties participating in the financing"; and (6) "the assignee of an assignment under this subsection shall file written notice of the assignment" with the government. 41 U.S.C. § 6305(b)(1–6). Second, 31 U.S.C. § 3727—titled "Assignments of Claims"—similarly governs the proper assignment of claims, interests in the claim against the United States Government, or "the authorization to receive payment for any part of the claim." 31 U.S.C. § 3727(a)(1)–(2). Specific procedures are statutorily mandated for lawfully assigning a claim. *See id.* § 3727(b). However, under subsection (c), a claim can be effective even if it does not abide by the restrictions of subsection (b) if the following conditions—nearly identical to those in Section 6305 of Title 41—are met. *Id.* § 3727(c). First, the claim must be for at least $1,000. *Id.* Second, the "contract [assigned] does not forbid an assignment." *Id.* § 3727(c)(1). Third, so long as the contract does not provide otherwise, the assignment "is for the entire amount not already paid . . . [the assignment] is made to only one party, except that it may be made to a party as agent or trustee for more than one party participating in the financing . . . and . . . may not be reassigned." *Id.* § 3727(c)(2). Fourth, the assignee must file a "written notice of the assignment and a copy of the assignment with the contracting official or head of the agency, the surety on a bond on the contract, and any disbursing official for the contract." *Id.* § (c)(3). Given the nearly identical requirements, the two statutes operate in tandem to prohibit most assignments of government contracts and claims to payment on those contracts absent strict compliance with their requirements.

## IV. Whether the Government Waived its Affirmative Defenses Related to the Anti-Assignment Acts

Plaintiff first argues because the government failed to raise its defenses related to the Anti-Assignment Acts in its Answer, the government "has therefore waived those defenses." Pl.'s Resp. at 20. Plaintiff further asserts it has been prejudiced by the government's delay in raising these defenses because plaintiff "continu[ed] to provide documents and expend resources on the mistaken belief that the parties were working toward a mutual and good faith resolution of this matter." *Id.* at 21. Instead of seeking settlement, plaintiff claims the government "weaponized [plaintiff]'s good-will against it by utilizing the documents [plaintiff] provided to advance additional theories that could have been raised years ago." *Id.* Plaintiff, however, does not allege any further prejudice related to its ability to pursue its case or adequately respond to the government's defenses. *See id.*

According to Rule 8(c)(1) of the Rules of the Court of Federal Claims ("RCFC"), "a party must affirmatively state any . . . affirmative defense." RCFC 12(b) further states "[e]very defense to a claim for relief in any pleading must be asserted in the responsive pleading." "[T]he failure to plead [an affirmative defense] can result in waiver." *Shell Oil Co. v. United* States, 896 F.3d 1299, 1315 (Fed. Cir. 2018) (quotations omitted) (alterations in original). Where, however, a plaintiff is allowed to "ably and thoroughly respond[] to the Government's arguments" for an affirmative defense and there is "no prejudice from the injection of the issue

at this stage," courts "will consider the defense on the merits." *Cities Serv. Helex, Inc. v. United States*, 211 Ct. Cl. 222, 234 n.14 (1976); *see also First Annapolis Bancorp, Inc. v. United States*, 75 Fed. Cl. 280, 288 (2007) ("An affirmative defense may be waived if not pled as prescribed, but the waiver is not effective absent unfair surprise or prejudice." (citing *Caldera v. Northrop Worldwide Aircraft Servs., Inc.*, 192 F.3d 962, 970 (Fed. Cir. 1999)).

Here, although the government did not raise an affirmative defense related to the Anti-Assignment Acts in its Answer in this case, *see* Answer, ECF No. 8, this does not end the inquiry because the Court may still "consider [the government's] defense on the merits" where plaintiff was given an opportunity to respond and no prejudice would result. *See Cities Serv. Helex, Inc.*, 211 Ct. Cl. at 234 n.14; *see also Borovicka v. United States*, 138 Fed. Cl. 534, 540 (2023) ("Where, as here, the opposing party is given adequate notice, an opportunity to respond, and is not prejudiced by the new defense, the failure to assert an affirmative defense in a responsive pleading does not automatically result in waiver."). As a result, in determining whether the Court should consider the government's defense on the merits, the Court reviews: (1) whether the government should have asserted the defense in a responsive pleading; and (2) whether plaintiff was allowed to ably and thoroughly respond to the government's defense.

First, the Court notes this action was stayed on 10 August 2023, shortly after the government filed its Answer and even before the parties could submit a Joint Preliminary Status Report. *See* 10 August 2023 Order Granting Joint Motion to Stay, ECF No. 11. The parties engaged in informal discovery and attempted to reach a nonjudicial solution, until the stay was lifted on 9 June 2025 and the government filed its Motion for Summary Judgment on 9 July 2025. *See* 9 June 2025 Order Terminating Stay, ECF No. 29; *see also* Gov't's MSJ. Given this case was jointly stayed for the overwhelming majority of the two years since the Complaint was filed, this case is still procedurally in relative infancy. Critically, the government states it only discovered the facts underlying its Anti-Assignment Acts defense *after* filing its answer and during the informal discovery period. *See* Gov't's Reply at 18. This means, the government could not have asserted the defense in its Answer. Although plaintiff insists the government "weaponized" its cooperation during the joint stay by ascertaining the facts underlying the Anti-Assignment Acts defense, plaintiff offers no evidence to support the accusation the government engaged in any misconduct, nor does plaintiff explain how the government "weaponized" the settlement negotiations, other than by obtaining documents it presumably could have equally sought in formal discovery. *See* Pl.'s Resp. at 21. Considering this case was jointly stayed for an extended period of time soon after the government filed its answer, and because the government discovered the grounds for the defense during the joint stay, the government likely did not waive its Anti-Assignment Acts defense.

Second, plaintiff had a full and fair opportunity to respond to the government's defense. Plaintiff agreed at oral argument it was on notice the government planned to raise defenses related to the Act "at least by March 2025." Tr. at 24:21–23. Several months later, on 16 July 2026, the government moved for summary judgment raising this defense. *See* Gov't's MSJ at 21. Plaintiff responded to the government's motion, substantively opposing the government's defenses and introducing the issue of waiver. *See* Pl.'s Resp at 10, 19. As the government explained at oral argument, given the posture on summary judgment, plaintiff also had an opportunity to submit any evidence supporting its opposition to the government's defenses.

*See* Tr. at 19:17–23 (noting if plaintiff had evidence the government consented to the assignment arrangements, plaintiff had "every opportunity" to present the evidence in its Response). Finally, the Court held oral argument on 11 February 2026 where plaintiff freely presented its arguments in opposition to the government's motion. Given plaintiff was afforded the opportunity to rebut the government's defense in its Response and at oral argument, plaintiff received its full and fair opportunity to respond to the government's arguments and suffered no prejudice. Moreover, although plaintiff argues it was "forced to bear time and expense of unilateral discovery by responding to the Government's requests for more information, while not receiving any information in return," plaintiff does not explain (1) why it could not have also sought information from the government during this time, and (2) whether it was under a specific obligation to engage with the government if it chose not to do so. *See* Pl.'s Resp. at 21. As a result, considering plaintiff was allowed to "ably and thoroughly respond[] to the Government's arguments" and was "no[t] prejudice[d] from the injection of the issue at this stage," the Court finds the government did not waive the defense and "will consider the defense on the merits." *Cities Serv. Helex, Inc. v. United States*, 211 Ct. Cl. 222, 234 n.14 (1976).

## V. Whether Plaintiff Validly Assigned the Contract Proceeds to ePlus Under the Anti-Assignment Acts

The Court next determines whether plaintiff's agreement with ePlus validly assigned the contract proceeds to ePlus consistent with the requirements of the Anti-Assignment Acts, 31 U.S.C. § 3727 and 41 U.S.C. § 6305. In doing so, the Court first examines whether the agreements between plaintiff and ePlus effected an assignment of the proceeds of plaintiff's contract with the government, which would then require plaintiff to comply with the Anti-Assignment Acts. Second, the Court determines whether, assuming the agreements did effect an assignment, plaintiff complied with the requirements of the Anti-Assignment Acts, as failure to do so would result in the assignments being void against the government. Third, the Court addresses whether the government waived the requirements of the Anti-Assignment Acts to recognize plaintiff's assignment to ePlus, permitting an assignment to be enforced against the United States even if plaintiff did not comply with the Anti-Assignment Acts.

### A. Whether the Agreements Between Plaintiff and ePlus Effected an Assignment of the Proceeds of the Contract

The Court first determines whether the Master Purchase Agreement and the Schedule 2 Agreement between plaintiff and ePlus effected an assignment of the proceeds of plaintiff's contract with the government. Plaintiff argues the Master Purchase Agreement is only a "commercial document[] . . . that go[es] toward financing of the contract"—not an actual assignment of any contract rights—and is therefore not subject to the Anti-Assignment Acts. Tr. at 33:2–8; *see also* Tr. at 46:1–9, 98:1–20. The government argues the agreements effect a straightforward assignment subject to the Acts. Gov't's MSJ at 23. As "[c]ontract interpretation is a question of law generally amenable to summary judgment," *Varilease Tech. Grp., Inc. v. United States*, 289 F.3d 795, 798 (Fed. Cir. 2002) (citation omitted), and "begins with the language of the written agreement," *Beacon Point Assocs. LLC v. Dep't of Vets. Affairs*, 139 F.4th 1306, 1309 (Fed. Cir. 2025) (citation and quotations omitted), the Court

begins with the language in plaintiff's agreements with ePlus to interpret whether plaintiff assigned its rights to ePlus.

The Master Purchase Agreement provides "Seller [*i.e.*, plaintiff] hereby 1) sells, *assigns*, and transfers to Buyer [*i.e.*, ePlus] all of Seller's right, title, and interest in the [Delivery Order] Payments and Equipment." Gov't's MSJ, Ex. 2 at 1, ECF No. 37-1 (Master Purchase Agreement) (emphasis added). Schedule 2, which incorporates the terms of the Master Purchase Agreement and specifically relates to the contract at issue in this case, similarly provides "Seller hereby (i) *assigns* and transfers to Buyer *all of Seller's rights and interest*, but none of its obligations, in the [Delivery order] payment." Gov't's MSJ, Ex. 3 at 1, ECF No. 37-1 (Schedule 2 Agreement between plaintiff and ePlus ) (emphasis added). According to 31 U.S.C. § 3727, an "assignment" is "(1) a transfer or assignment of any part of a claim against the United States Government or of an interest in the claim; or (2) the authorization to receive payment for any part of the claim." Here, the language of the written agreements directly recites plaintiff "assigns . . . all of [its] rights and interests" to payment from the government to ePlus. Gov't's MSJ, Ex. 2 at 1 (Master Purchase Agreement); Gov't's MSJ, Ex. 3 at 1 (Schedule 2 Agreement between plaintiff and ePlus). In applying the statute's definition of assignment, moreover, plaintiff not only provided ePlus "authorization to receive payment for [a] part of the claim," plaintiff also assigned and transferred all rights pertaining to the "[Delivery Order] Payments and Equipment." *Compare* 31 U.S.C. § 3727 *with* Gov't's MSJ, Ex. 2 at 1 (Master Purchase Agreement). Further, the Master Purchase Agreement defines the price paid to ePlus under the Schedule 2 agreement as the "Assignment Price." Gov't's MSJ, Ex. 2 at 1 (Master Purchase Agreement).

As further indication the Master Purchase Agreement was an assignment to ePlus, the Court compares the Master Purchase Agreement (between plaintiff and ePlus) to plaintiff's Assignment Instrument to Wilmington Trust. At oral argument, plaintiff confirmed it assigned its rights to Wilmington Trust, and the "language from the Echelon to Wilmington Trust is subject to the FAR 32.8 under the Assignment of Claims Act." Tr. at 139:4–11. Although plaintiff characterized the agreements with ePlus as merely "commercial documents" rather than an assignment at oral argument, plaintiff agreed the agreements with ePlus use the *same* language as the Wilmington Trust assignment. Tr. at 138:21–139:20; *compare* Gov't's MSJ, Ex. 9 (Notice of Assignment and copy of Instrument of Assignment to Wilmington Trust) ("does hereby assign, set over, and transfer unto Wilminton Trust . . . as Assignee, all of [plaintiff's] rights and interests to all monies and/or payments due . . . .) *with* Gov't's MSJ, Ex. 3 (Schedule 2 Agreement between plaintiff and ePlus) ("assigns and transfers to [ePlus] all of [plaintiff's] rights and interest, but none of its obligations, in the DO payments . . . ."). If there was any remaining doubt, plaintiff's counsel agreed at oral argument the Master Purchase Agreement "clarifies that [plaintiff]'s right to all payments are assigned to ePlus." Tr. at 91:11–14. Considering plaintiff's agreement at oral argument and the language of plaintiff's agreements with ePlus explicitly assigning and transferring plaintiff's rights, and given plaintiff agrees the language used in plaintiff's agreements with ePlus are the same as the Wilmington Trust instrument assigning plaintiff's interests to Wilmington Trust, the Court interprets the Master Purchase Agreement and the Schedule 2 agreement as an assignment of plaintiff's rights to payment on its contract with the government to ePlus. *Varilease Tech. Grp., Inc.*, 289 F.3d at 798; *Beacon Point Assocs.*, 139 F.4th at 1309.

### B. Whether the Assignment to ePlus Complied with the Requirements of the Anti-Assignment Acts

Given the Court's conclusion the Master Purchase Agreement and the Schedule 2 follow-on agreement effected an assignment to ePlus, the Court next determines whether the assignment complied with the requirements of the Anti-Assignment Acts. 31 U.S.C. § 3727 limits assignments of government contracts to specific circumstances where the contract: (1) does not forbid an assignment; (2) is assigned to "a bank, trust company, or other financing institution"; (3) is assigned "for the entire amount not already paid"; (4) is assigned only to one party; and (5) may not be reassigned. *See* 31 U.S.C. § 3727(c); 41 U.S.C. § 6305(b) (same requirements). Even if these conditions are met, the assignment is only valid if "the assignee files a written notice of the assignment and a copy of the assignment with the contracting official or the head of the agency, the surety on a bond on the contract, and any disbursing official for the contract." *Id.* The Court examines in turn whether plaintiff's assignment to ePlus complied with each of these requirements.

First, the Anti-Assignment Acts only permit an assignment where the contract does not itself forbid an assignment. *See* 31 U.S.C. § 3727(c)(1); 41 U.S.C. § 6305(b)(3). Nothing in the contract here specifically forbids an assignment. *See* Gov't's MSJ, Ex. 1 (Contract between the government and plaintiff). The parties agree plaintiff's assignment to Wilmington Trust is valid,[4] thus no party argues the contract specifically forbids an assignment. *See* Gov't's MSJ at 5, 10–11; Pl.'s Resp. at 6.

Second, the Anti-Assignment Acts only permit an assignment where the assignee is "a bank, trust company, or other financing institution." *See* 31 U.S.C. § 3727(c); 41 U.S.C. § 6305(b)(1). Although "financing institution" is not defined in the statute, the Federal Circuit explains "a financing institution supplies financing. . . . It lends money or provides capital." *Fireman's Fund Ins. Co. v. England*, 313 F.3d 1344, 1350 (Fed. Cir. 2002). The term does not include an insurance company, *see id.*, nor does it include a surety, *see id.* (citing *Royal Indeminity Co. v. United States*, 117 Ct. Cl. 736, 746 (1950)). Here, plaintiff argues ePlus "considers itself a financial institution" because "it lends money, it finances certain government contracts, and it provides its capital as well." Tr. at 112:7–14. The government stated it "couldn't determine" whether ePlus is a financing institution, but argued it does not matter because the assignment fails for other reasons. Tr. at 114:12–19. Although the parties did not address ePlus' specific status as a financing institution, plaintiff agreed at oral argument ePlus was "not lending in this instance" and was simply "procuring financing." Tr. at 121:6–9. The Court is skeptical of the notion ePlus can validly be a financing institution where plaintiff agrees it provided no actual financing and is instead characterized as a "vendor" to plaintiff. *See* Tr. at 121:6–7 ("[PLAINTIFF]: I would defer to the characterization as a vendor."). Given

[4] Even if plaintiff's assignment to Wilmington Trust were not valid under the Anti-Assignment Acts, it is a textbook example of the government's ability to waive the Act's requirements and recognize an assignment because the government received a formal notice of the assignment, signed the notice, modified the contract to reflect the notice, and made payments to Wilmington Trust. *See* Section VII.C, *infra*.

the government does not directly argue ePlus is not a financial institution, no briefing or discovery has taken place on its status, and the Court is required to "draw all justifiable inferences [] in the non-movant's favor" on summary judgment, the Court assumes strictly for the purposes of summary judgment ePlus is a financial institution within the confines of the Anti-Assignment Acts. *See Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001).

Third, the Anti-Assignment Acts require an assignment to be for the "entire amount not already paid" on the contract. *See* 31 U.S.C. § 3727(c)(2)(A); 41 U.S.C. § 6305(b)(4). Plaintiff's assignment to ePlus in the Schedule 2 contract provided plaintiff assigned "all of [plaintiff]'s rights and interest" in the contract to ePlus. Gov't's MSJ, Ex. 3 at 1 (Schedule 2 Agreement between plaintiff and ePlus). Considering the plain language of this provision indicates plaintiff assigned ePlus 100% of the outstanding payments on the contract, the purported assignment comports with the third requirement in the Anti-Assignment Acts framework. *See* 31 U.S.C. § 3727(c)(2)(A); 41 U.S.C. § 6305(b)(4).

Fourth, regarding the requirement the assignment "is made only to one party," the parties agree plaintiff validly made one assignment to *Wilmington Trust* prior to the effective date of the assignment to ePlus. *See* Gov't's MSJ at 5, 10–11; Pl.'s Resp. at 6, 17. Given the prior valid assignment, plaintiff's attempt to assign those same rights to ePlus violates the Anti-Assignment Acts' prohibition on making more than a single assignment. *See* 31 U.S.C. § 3727(c)(2)(B); 41 U.S.C. § 6305(b)(5). Plaintiff argues its contract with ePlus did not violate the rule against multiple assignments because Section 3727 "permits assignment to 'only one party' that may act 'as agent or trustee for more than one party participating in the financing.'" Pl.'s Resp. at 16–17 (quoting 31 U.S.C. § 3727). Plaintiff asserts its arrangement falls into this provision because Wilmington Trust—which all parties agree is a valid assignee—was simply acting as the agent or trustee to pay ePlus, who was participating in the financing arrangement. *Id.* For support, plaintiff cites a 1962 case in which the Court of Claims approved an arrangement where a government contractor assigned its contract payments to a bank, and then instructed the bank to send 40% of the funds to another entity, First Mortgage, who had given the government contractor a loan to fulfill its contract. *See Coleman v. United States*, 158 Ct. Cl. 490, 493 (1962). In *Coleman*, however, there was only *one* assignment; the contractor assigned the proceeds to the bank, who was then instructed to hand 40% of the funds over to First Mortgage. *See id.*; Tr. at 190:7–9 ("[THE COURT:] You agree, though, that there was only one assignment of rights in Coleman. [PLAINTIFF]: Correct."). The contractor there did not assign contract rights to First Mortgage and then attempt to assign the same rights to the bank in order to pay First Mortgage. *See Coleman*, 158 Ct. Cl. at 493. *Coleman* thus affirms Section 3727(c)(2)(B) permits a single assignee to act as an agent who then pays out the contract proceeds it receives to other entities providing funds to a contractor, but it does not bless an arrangement where multiple parties are assigned the same contract rights. *Id.* Here, unlike in *Coleman*, plaintiff attempted to make *two* assignments: one to Wilmington Trust and another to ePlus. *See* Section VII.A, *supra*. *Coleman* therefore does not support plaintiff because there was only a single assignment in *Coleman*. Subsection (c)(2)(B) of Section 3727 clarifies a contractor is free to use a single assignee to distribute the proceeds of a contract among many different entities, but not to make multiple assignments from the same contract. Accordingly, plaintiff's second assignment to ePlus violates the Anti-Assignment Acts' bar on

multiple assignments and cannot be rescued by subsection (c)(2)(B) of Section 3727. *See* 31 U.S.C. § 3727(c)(2)(B); 41 U.S.C. § 6305(b)(5).

Fifth, the Anti-Assignment Acts provide a contract, after one assignment, "may not be reassigned." *See* 31 U.S.C. § 3727(c)(2)(c); 41 U.S.C. § 6305(b)(5). On 30 March 2026—after plaintiff assigned the contract payments to ePlus—ePlus signed an "Assignment Agreement" with Wells Fargo in which ePlus agreed to "sell, transfer, convey, and assign to [Wells Fargo] . . . all and every right, title and interest of [ePlus] . . . in and to" the contract between plaintiff and the government. Gov't's MSJ, Ex. 11 at 1–2 (Assignment Agreement between ePlus and Well Fargo). The agreement specifically refers to ePlus and Wells Fargo as "assignor" and "assignee," respectively. *Id.* There can be little doubt this 30 March agreement assigned ePlus' interest in the contract—which plaintiff had assigned to ePlus—to Wells Fargo. *Id.* In other words, after plaintiff simultaneously assigned all rights and interests to Wilmington Trust and ePlus, ePlus then re-assigned all of its interests to Wells Fargo. *Id.*; Gov't's MSJ, Ex. 2 at 1 (Master Purchase Agreement). This reassignment of the contract therefore violates the Anti-Assignment Acts' requirement a contract, after one assignment, "may not be reassigned." *See* 31 U.S.C. § 3727(c)(2)(c); 41 U.S.C. § 6305(b)(5).

Sixth, even if all of the above requirements are met, the Anti-Assignment Acts require an assignee to file "a written notice of the assignment and a copy of the assignment" with the government. 31 U.S.C. § 3727(c)(3); *see* 41 U.S.C. § 6305(b)(6). For example, shortly after executing the assignment with plaintiff, Wilmington Trust filed a notice of assignment with the government which included a copy of the agreement between plaintiff and Wilmington Trust assigning plaintiff's interest in the contract payments. *See* Gov't's MSJ, Ex. 9 (Notice of Assignment and copy of Instrument of Assignment to Wilmington Trust). Plaintiff, however, does not argue ePlus filed any notice of its assignment with the government, nor is any such notice present in the record. Plaintiff argues ePlus was not required to file a notice of assignment because it was only a party participating in the financing, not an assignee. *See* Pl.'s Resp. at 16; Tr. at 21:8–22:19. Given the Court's prior holding plaintiff's agreement assigned plaintiff's rights to the contract to ePlus, *see* Section V.A, *supra*, ePlus was obligated to file a notice with the government. Plaintiff offered no evidence of such a notice here. Accordingly, there is no evidence in the record to form a genuine dispute of material fact as to whether ePlus filed a notice of assignment with the government, and given ePlus did not, this failure violates the Anti-Assignment Acts. *See* 31 U.S.C. § 3727(c)(3); 41 U.S.C. § 6305(b)(6).

In summary, although plaintiff's agreement with the government did not forbid assignments, and even presuming ePlus is an financial institution, plaintiff's agreement with ePlus violated the Anti-Assignment Acts for three reasons: (1) plaintiff assigned the whole balance of the contract to multiple parties (Wilmington Trust and ePlus); (2) after plaintiff purported to assign all rights to ePlus, ePlus then re-assigned all its interests to Wells Fargo; and (3) even if all the other requirements were met, plaintiff provided no evidence of proper notice of the assignment with the government. Given plaintiff's failure to comply with all requirements of the Anti-Assignment Acts, plaintiff's assignment to ePlus is rendered "null and void" as against the government. *Northrup Grumman Computing Sys., Inc. v. United States*, 709 F.3d 1107, 1113 (Fed. Cir. 2013) ("*Northrup I*") ("The Court of Federal Claims correctly found that Northrop's failure to notify the Government of its assignment rendered the

assignment 'null and void as against the United States' by operation of the Anti–Assignment Act.").

**C. Whether the Government Waived the Anti-Assignment Acts and Recognized the Assignment to ePlus**

Given the Court's conclusion the assignment to ePlus did not comply with the requirements of the Anti-Assignment Acts, and thus is null and void as against the United States unless the government has waived those requirements, the Court next examines whether the government waived those requirements by recognizing the assignment.[5] Plaintiff states "there exists a genuine dispute of material fact as to the Army's knowledge and assent to the assignments" because the contracting officer was allegedly "aware[] of ePlus' involvement in the financing of this Contract." Pl.'s Resp. at 18–19. The Court interprets plaintiff's statement as arguing disputes of fact exist regarding whether the government waived the protections of the Anti-Assignment Acts by recognizing the assignment to ePlus.

Although not cited or discussed in plaintiff's Response, well-established caselaw permits the government to waive the protections of the Anti-Assignment Acts and recognize an assignment as valid. *See Tuftco Corp. v. United States*, 614 F.2d 740, 745 (Ct. Cl. 1980) ("Despite the bar of the Anti-Assignment statute . . . the Government, if it chooses to do so, may recognize an assignment." (citations and quotations omitted)). To determine whether the government waived the protections of the Anti-Assignment Acts, courts apply a "totality of the circumstances" test. *See id.* at 746 ("It is unnecessary to identify any one particular act as constituting recognition of the assignments by the Government. It is enough to say that the totality of the circumstances presented to the court establishes the Government's recognition of the assignments by its knowledge, assent, and action consistent with the terms of the assignments."). "In *Tuftco* and subsequent cases, courts looked to a variety of factors to evaluate which party was favored by the totality of the circumstances, including whether: (1) the assignor and/or the assignee sent notice of assignment to the Government; (2) the contracting officer signed the notice of assignment; (3) the contracting officer modified the contract according to the assignment; and (4) the Government sent payments to the assignee pursuant to the assignment." *Riviera Fin. Of Tex., Inc. v. United States*, 58 Fed. Cl. 528, 530 (2003). "These factors are not meant to be exhaustive, and all need not be present in a given case." *Id.* "[W]here the Government's course of conduct, its statements to the parties and its dealings with the assignee indicate it acknowledges the assignee as the contractor, recognition has been found." *Tuftco*, 614 F.2d at 745.

Plaintiff does not argue it supplied any formal notice to the Army of its assignment of rights to payment to ePlus but instead contends the Army was "aware" ePlus was "involve[ed] in the financing of this Contract" due to an email exchange with the Army which mention ePlus. Pl.'s Resp. at 18–19. In this exchange, plaintiff sent an email to the government to confirm plaintiff's payment terms and conditions were incorporated into the contract and, after

[5] The Court notes plaintiff does not clearly raise the argument the government waived the Anti-Assignment Acts in its Response and cites no caselaw on when the government waives those requirements by recognizing an assignment. Nevertheless, the Court will briefly address whether there is evidence of waiver by the government here.

the government confirmed the conditions were attached to the Contract, requested the government explicitly confirm incorporation because "ePlus asked that I send that email." Pl.'s Resp., Ex. 3 at 1–3 (3 March 2021 Emails between plaintiff and the government). Nothing in this email exchange serves to affirmatively notify the government ePlus had any *specific* interest in the contract, much less ePlus had been assigned the rights to the contract payments. *See id.* As a point of comparison, Wilmington Trust—who the parties agree properly provided notice of the assignment—submitted a signed "Notice of Assignment" to the Contracting Officer with the Instrument of Assignment. Gov't's MSJ, Ex. 9 at 1–2 (Notice of Assignment and copy of Instrument of Assignment to Wilmington Trust). ePlus did no such thing. Moreover, in view of the totality of circumstances required by *Tuftco* and its progeny, there is no evidence in the record plaintiff or ePlus sent notice of assignment to the government. Even assuming the email from plaintiff to the contracting officer did constitute notice, *arguendo*, the contracting officer never signed a document (or the email) or modified the contract according to the assignment—nor did the government send payments to ePlus pursuant to the purported assignment. *Tuftco*, 614 F.2d at 745; *Riviera Fin. Of Tex.*, 58 Fed. Cl. at 530 (noting a four-element test to satisfy *Tuftco* and its progeny). The totality of circumstances, viewed with all inferences drawn in plaintiff's favor, advocates for a finding plaintiff failed to provide notice to the government of the assignment.

Although plaintiff argues genuine disputes of fact exist as to the government's awareness of ePlus' interest in the contract, knowledge alone is insufficient to establish the government's assent to an assignment. *See Tuftco*, 614 F.2d at 745. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Monon Corp. v. Stoughton Trailers, Inc.*, 239 F.3d 1253, 1257 (Fed. Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Even if plaintiff were to definitively prove the government was *aware* of the nature of the assignment arrangement between plaintiff and ePlus, this would still be insufficient circumstances to establish the government waived the requirements of the Anti-Assignment Acts. *See Tuftco*, 614 F.2d at 745. Accordingly, plaintiff failed to demonstrate a genuine dispute of material fact as to the government's waiver of the Anti-Assignment Acts and the government is entitled to judgment as a matter of law.

Given the Court concluded plaintiff's agreement with ePlus assigned its contract rights to ePlus, *see* Section VII.A, *supra*, that assignment failed to comply with the Anti-Assignment Acts, *see* Section VII.B, *supra*, and because the government did not waive the protections of the Anti-Assignment Acts, *see* Section VII.C, *supra*, plaintiff's assignment to ePlus is "null and void as against the United States." *Northrup I*, 709 F.3d at 1113 (affirming Court of Federal Claims' decision failure to comply with Anti-Assignment Acts renders an assignment "null and void"). Plaintiff insists this result "would usher the return to highly troubling circumstances" where lenders will be unwilling to finance government contracts because they will be "unable to rely upon assignments of amounts payable under such contracts as security." Pl.'s Resp. at 18. To be clear, nothing in this opinion diminishes the enforceability of assignments of government contracts which comply with the Anti-Assignment Acts or have been recognized and assented to by the government. Government contractors remain free to secure private financing and either assign their rights to a single financier, or engage with multiple partners and assign their rights to a single entity to pay all financiers. Plaintiff further asserts the

Anti-Assignment Acts must be "construed so as to carry out the purpose of Congress to encourage the private financing of government contracts." Pl.'s Resp. at 12. The Anti-Assignment Acts, however, were designed to "'to prevent possible multiple payment of claims, to make unnecessary the investigation of alleged assignments, and to enable the Government to deal only with the original claimant.'" *United States v. Shannon*, 342 U.S. 288, 283–84 (1952) (quoting *United States v. Aetna Surety Co.*, 338 U.S. 366, 373 (1949). Plaintiff's situation here introduces the problem the Acts were designed to avoid, as plaintiff is now before the Court ostensibly asserting claims on behalf of ePlus, which the government never contracted with and to whom the government never approved an assignment of any claim or contract. Plaintiff's failure to comply with the Acts or secure the government's waiver thus renders its assignment to ePlus "null and void as against the United States." *Northrup I*, 709 F.3d at 1113 (affirming Court of Federal Claims' decision failure to comply with Anti-Assignment Acts renders an assignment "null and void"). Accordingly, even assuming the government breached the contract, plaintiff assigned to others its right to enforce the full measure of payments under the contract—that assignment, being void as against the government, cannot form the basis of a claim against the United States for the balance of money allegedly due under the contract. *See Northrup Grumman Computing Sys., Inc. v. United States*, 823 F.3d 1364, 1368 (Fed. Cir. 2016) ("*Northrup II*").

## VI. Whether Plaintiff Faces any Damages or Liability Sufficient to Support a contract Claim

The Court lastly determines whether, given the Court's conclusion in Section VI, *supra*, plaintiff faces any liability or damages which may form the basis for a valid claim for breach of contract against the government. As plaintiff's assignment to ePlus is null and void, any claims against the United States must be brought in plaintiff's own right asserting plaintiff's own damages. *See Northrup I*, 709 F.3d at 1113 (holding, where attempted assignment is "null and void," the original contractor may still bring a breach of contract claim for its damages); *see also Colonial Navigation Co. v. United States*, 149 Ct. Cl. 242, 247 (1960) ("[A]n attempted assignment of a claim against the United States does not forfeit the claim. It leaves the claim where it was before the purported assignment."); *Beaconwear Clothing Co. v. United States*, 174 Ct. Cl. 40, 53 (1966) (holding where assignment of contractual right to receive payments was void as against the Government, the prime contractor "thus remains the only party which has a legal claim to the amount due under the contract").

The government argues "the documentary evidence here demonstrates . . . [plaintiff] was not harmed by the Government's decision not to exercise the option periods to the Contract." Gov't's MSJ at 32. Plaintiff argues the government "has not established that [plaintiff] has been absolved of all responsibility or liability through its agreement with ePlus," Pl.'s Resp. at 17 (quotations omitted), thus plaintiff may face liability to a third party which could form the basis of a pass-through claim, *see* Tr. at 53:7–20. The Court must therefore determine whether plaintiff has demonstrated a genuine dispute of material fact regarding damages it has itself suffered or liability it faces as a result of the government's purported breach of the contract. First, the Court determines whether plaintiff has shown evidence it has suffered damages in its own right. Second, the Court determines whether plaintiff has shown a

genuine dispute of material fact as to its liability to a third party as a result of the government's purported breach.

### A. Whether the Government is Entitled to Summary Judgement Plaintiff Itself Suffered No Damages

The Court first determines whether plaintiff has produced sufficient evidence of damages it suffered as a result of the government's purported breach to defeat the government's Motion for Summary Judgment. The government argues plaintiff sold all of its rights to the proceeds of the contract to ePlus, and was paid the amount due for those rights, and "therefore, Echelon has no expectancy—or an other type of damage claim—that it can assert as damages that it experienced as a result of the alleged breach." Gov't's MSJ at 32 (emphasis omitted).

For a contractor to make its contract claim, as with any plaintiff, "[i]t is fundamental in contract law . . . to recover on a breach of contract claim, a plaintiff must prove damages—that it has been harmed." *Northrup II*, 823 F.3d at 1368 (citing Restatement (Second) of Contracts § 346 (1981)). "Damages must be particular to the plaintiff," thus "[a] plaintiff fails to meet this burden upon proof of damages to third parties, but not to its own person." *Id.* (citing *Severin v. United States*, 99 Ct. Cl. 435 443 (1943)). Damages "can be expectancy damages, measured relative to expected profits; restitution damages, measured relative to a plaintiff's position when the contract was signed; or reliance damages, as a sum of damages sustained as a result of a breach." *Id.* In determining whether plaintiff has been harmed by an alleged breach of contract, "[t]he Court of Federal Claims [should] take into account [plaintiff's] profits from the assignment of the Delivery Order." *Northrup II*, 823 F.3d at 1368.

Shortly after signing the contract with the government, plaintiff assigned all of its rights to the contract payments to ePlus in return for a sum of money called the "assignment price." Gov't's MSJ, Ex. 3 at 2 (Schedule 2 Agreement between plaintiff and ePlus). Plaintiff confirmed at oral argument it was paid its assignment price in full.[6] Tr. at 51:9–10 ("THE COURT: So Echelon was paid in full[?] [PLAINTIFF]: That's my understanding."); *see also* Gov't's MSJ, Ex. 7 (Invoice from plaintiff to ePlus for assignment price). Apart from this assignment price, plaintiff was entitled to no further profit stemming from its contract with the government. *See* Gov't's MSJ, Ex. 3 at 2 (Schedule 2 Agreement between plaintiff and ePlus). This means, the assignment price "represented the full extent of [plaintiff's] anticipated profit upon assigning the Delivery Order." *Northrup II*, 823 F.3d at 1368. Given it received all anticipated profits, *plaintiff* was not harmed by an alleged breach of the contract. *Id.* ("The Court of Federal Claims was correct to take into account Northrop's profits from the assignment of the Delivery Order in determining that it had not been harmed by an alleged breach of that contract."). Further, "[plaintiff] offered no proof that it expended resources or incurred any liabilities that cut into its anticipated profit[, and plaintiff] is in at least as good, if not better, a position as it expected when it assigned the Delivery Order payments, and it has not shown any particular harm to itself flowing from the alleged breach." *Id.* Under the

[6] Plaintiff further confirmed Wells Fargo—not plaintiff—is the party who was not paid as they have an outstanding loan. Tr. at 51:17–21 (THE COURT: So who was not paid? [PLAINTIFF]: Wells. THE COURT: Wells Fargo was not paid. [PLAINTIFF]: They have an outstanding loan, correct."). Plaintiff then confirmed Wells Fargo is not in contract with the government because "[t]he privity is still with Echelon." Tr. at 51:22–24.

agreements it negotiated with the government and ePlus, plaintiff "had its full self-measure of profit" and, given plaintiff assigned away its interests in the contract payments, "stood neither to gain nor to lose whether or not the Government exercised the option years." *Id.* Accordingly, plaintiff failed to raise any genuine dispute of material fact, and the government is entitled to judgment as a matter of law *plaintiff* suffered no damages as a result of the government's alleged breach. *See id.*

### B. Whether Plaintiff May Bring a Pass-Through Claim for Liability to a Third Party Caused by the Government's Alleged Breach

Although plaintiff cannot show a direct injury as a result of the government's purported breach, the Court must next determine whether plaintiff may bring a "pass-through" claim for potential liability to a third party as a result of the government's breach of the contract. Under the Tucker Act, the "government consents to be sued only by those with whom it has privity of contract, which it does not have with subcontractors." *E.R. Mitchell Cost. Co. v. Danzig*, 175 F.3d 1369, 1370 (Fed. Cir. 1999). "[I]f [a] prime contractor is liable to [a] subcontractor for damages sustained by the subcontractor, that prime contractor can bring an action against the government for the subcontractor's damages" because, in that circumstance, "the prime contractor itself is injured by the acts of the government and, therefore, has standing to sue the government in a pass-through suit on behalf of its subcontractor." *W.G. Yates & Sons Const.*, 192 F.3d at 991 (citing *E.R. Mitchell*, 175 F.3d at 1370). In other words, a prime contractor—who has privity with the government—may sue to recover damages caused by the government but suffered by a party without privity with the government if the prime itself is liable for those damages. *See id.* A pass-through claim "may be maintained only when the prime contractor has reimbursed its subcontractor for the latter's damages or remains liable for such reimbursement in the future." *J.L. Simmons Co. v. United States*, 158 Ct. Cl. 393, 397 (1962). Under the *Severin* doctrine, it is well-established "if the government seeks dismissal of the prime contractor's pass-through suit, the government bears the burden of proof, and must show that the prime contractor is not responsible for the costs incurred by the subcontractor." *W.G. Yates & Sons Const. Co.*, 192 F.3d at 991 (citing *E.R. Mitchell Co.*, 175 F.3d at 170). "[The Federal Circuit] has confirmed that 'application of the *Severin* doctrine has been narrowly construed.'" *E.R. Mitchell Co.*, 175 F.3d at 1370 (quoting *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1552 & n.8 (Fed. Cir. 1983)).

In its Motion for Summary Judgment, the government presented the assignment agreements between plaintiff and ePlus and between ePlus and Wells Fargo. *See* Gov't's MSJ, Ex. 3 (Schedule 2 Agreement between plaintiff and ePlus); *id.*, Ex. 11 (Assignment Agreement between ePlus and Well Fargo). The government argues there is "no provision in the Master Purchase Agreement or Schedule 2 that holds [plaintiff] liable for the failure of the Government to exercise a renewal option." Gov't's MSJ at 29. The government's argument, however, confuses its burden under *Severin*. The *Severin* doctrine requires "an iron-bound release or contract provision immunizing the prime contractor completely from any liability to the sub." *Cross Const. Co. v. United States*, 225 Ct. Cl. 616, 618 (1980) (citations omitted). Here, the agreement between plaintiff and ePlus does not contain an "iron-bound release" or provide for complete "immunity" from liability to ePlus. Rather, as the government recognizes, there is simply "no provision" in the agreement which specifies the whole bounds of plaintiff's liability

to ePlus or lack thereof. *See* Gov't's MSJ, Ex. 3 at 1 (Schedule 2 Agreement between plaintiff and ePlus) (incorporating terms of Master Purchase Agreement); Gov't's MSJ, Ex. 2 (Master Purchase Agreement) at 2 (specifying terms of liability by plaintiff to ePlus). Moreover, "[i]f the subcontract is silent as to the ultimate liability of the prime contractor to the subcontractor for the damages complained of, suit by the former against the Government [on] behalf of the subcontractor will generally be permitted." *J.L. Simmons Co.*, 158 Ct.Cl. at 398 (1962). In *J.L. Simmons Co.*, the Court of Claims denied the government's motion for summary judgment seeking dismissal under *Severin* because "there [was] no clause in any of the[] subcontracts expressly negating plaintiff's liability to them for the claims being asserted." *Id.* at 399. Plaintiff's agreement with ePlus likewise does not contain any clause "expressly negating" liability to ePlus in the event the government breaches the contract by failing to exercise the additional option years. *See* Gov't's MSJ, Ex. 2 (Master Purchase Agreement) at 2, *id.*, Ex. 3 at 1 (Schedule 2 Agreement between plaintiff and ePlus). Given plaintiff's agreement with ePlus is silent as to plaintiff's ultimate liability and contains no "iron-bound release," the government failed to meet its burden to affirmatively show plaintiff is not liable to ePlus. *Cross Const. Co.*, 225 Ct. Cl. at 618; *W.G. Yates & Sons Const.*, 192 F.3d at 991 ("[I]f the government seeks dismissal of the prime contractor's pass-through suit, the government bears the burden of proof, and must show that the prime contractor is not responsible for the costs incurred by the subcontractor."). Accordingly, the Court denies in part the government's Motion for Summary Judgment insofar as plaintiff seeks monetary relief for liability incurred to a third party related to the government's alleged breach. *See J.L. Simmons Co.*, 158 Ct. Cl. at 398 ("[I]f the subcontract is silent as to the ultimate liability of the prime contractor to the subcontractor for the damages complained of, suit by the former against the Government in behalf of the subcontractor will generally be permitted.").

Although the Court holds the government fails to carry its burden under the *Severin* doctrine to show plaintiff is released from any potential liabilities which could serve to support a pass-through claim, this does not displace plaintiff's own burden: "to recover on a breach of contract claim, a plaintiff must prove damages." *Northrup II*, 823 F.3d at 1368. Plaintiff's Complaint is noticeably bare on allegations related to any liability supporting a pass-through claim, and both its briefing and oral argument opposing the government's Motion for Summary Judgment did little to clarify to whom it is purportedly liable or in what amount. *See, e.g.*, Compl. ¶ 1 ("Plaintiff, ES, on its behalf as prime contractor, and to protect the interests of ePlus Government, Inc. and Wilmington Trust, National Association (collectively, the 'Parties')"), ¶ 51 ("The Parties incurred damages and suffered financial harm due to their reliance on the Army's commitment to renew and issue payment for the full term of the Contract."); *see also* Tr. at 171:6–12 ("THE COURT: So if the assignments were null and void, would Echelon still be liable [for] loan payments to Wells Fargo? [PLAINTIFF]: I think a pass-through claim could potentially be there and that's consistent to the extent that we're in the Northrop construct . . . within that. We don't know."), 193:17–20 ("[THE COURT:] Your assertion, I thought before, was that there could be a pass-through claim and that further discovery could shed light on the pass-through claim. [PLAINTIFF]: Correct."). As the Court noted in Section V, *supra*, this case is still procedurally in its relative infancy. Accordingly, the Court orders the parties to meet and confer and file a Joint Status Report ("JSR") wherein: (1) plaintiff shall clarify from whom it allegedly faces liability related to the government's purported breach of the contract; (2) plaintiff shall detail what discovery, if any, will be necessary to substantiate its

claim of liability related to the government's purported breach; and (3) the parties shall propose next steps for this case.

## VII. Conclusion

For the foregoing reasons, the Court **GRANTS in PART** and **DENIES in PART** the government's Motion for Summary Judgment, ECF No. 36. The parties **SHALL FILE** a JSR on or before **14 September 2026** addressing: (1) what liability to a subcontractor plaintiff is claiming to face as a result of the government's breach; (2) whether discovery is necessary to substantiate plaintiff's claim of liability to a subcontractor; and (3) the parties' proposals for next steps in this case.

**IT IS SO ORDERED.**

s/ Ryan T. Holte
RYAN T. HOLTE
Judge